

Eastern District of Kentucky
FILED

APR 2 6 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-286-GWU

DINAH F. MEADE,                                           PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                   DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI). The appeal is

currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Meade

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.    See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled.    If no, proceed to Step 7.    See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled.    See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Meade

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Meade

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.   Varley   v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Dinah F. Meade, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a history of disc herniations at L4-L5 and L5-S1 (being status post L4-L5 and L5-S1 diskectomy and laminectomy times two), a history of left carpal tunnel syndrome (being status post carpal tunnel release surgery), a history of right tibia fracture (status post intermedullary rodding of right tibia and status post intermedullary rod removal with a leg length discrepancy), depression, anxiety, post traumatic stress disorder, and a personality disorder. (Tr. 23).  Nevertheless, the ALJ determined that the plaintiff retained the residual functional capacity to perform sedentary level exertion, with no more than two hours of standing and walking and no more than six hours of sitting in an eight-hour day, no more than frequent ("one third") crawling or climbing of ramps and stairs, and that she was capable of performing tasks, relating to others, and adapting to a work environment. (Tr. 25).  He proceeded to find that the plaintiff retained the

Meade

residual functional capacity to perform her past jobs as a receptionist and rental agent and, therefore, was not entitled to benefits. (Tr. 27-8). The Appeals Council declined to review, and this action followed.

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff had previously been awarded a closed period of disability from March 29, 1991 to April 28, 1992, primarily due to lower back surgery. (Tr. 37-44). Following this, she returned to work. She alleged disability in her present application beginning March 21, 2000 due to a limp from a broken leg and pain from her previous back surgery. (Tr. 78). At the administrative hearing, she described pain due to prior back surgeries, as well as difficulty with anxiety and depression, so much so that she stated that it was a relief to break her leg in 2000. (Tr. 643, 645). She described pain in her low back going down both legs, but also had separate pain in her right leg, which had been broken in three places. (Tr. 646, 648).

Much of the medical evidence in the transcript concerns the period before the plaintiff's alleged current onset date, and included records reflecting carpal tunnel surgery in 1996 and 1999 with good results (Tr. 148-9, 242-4), lumbar spine surgery

8

Meade

in 1978 (Tr. 240) and further lumbar spine surgery in 1992 (Tr. 164, 199-201, 221-7), after which the treating surgeon released her to "light-duty work status" (Tr. 200).[1]

In connection with the period relevant to the present application, records from the Detroit-Macomb Hospital show that the plaintiff was treated in March, 2004 for a right tibia fracture, which required intermedullary rodding of the right tibia. (Tr. 252, 260). X-rays showed that the fracture was in perfect alignment. (Tr. 264).

A consultative physical evaluation by Dr. Peter Samet on November 30, 2000 showed that the plaintiff had normal strength, sensation, reflexes, and muscle tone, a full range of motion of the extremities, and her surgical scar was completely healed. (Tr. 319). However, her right leg was one half-inch longer than the left. (Id.). He found lumbosacral spine tenderness, but the plaintiff was able to bend forward 90 degrees at the waist and had a negative straight leg raising test. (Id.). She walked with a right-sided limp due to pain as well as due to the leg length discrepancy. (Tr. 320). She was able to squat and get up independently, and stated that she was independent with her activities of daily living, but had difficulty with prolonged standing and walking. (Id.). Dr. Samet completed a form stating that the plaintiff had no ability, based on his objective examination to stoop, squat and arise

---

[1]The treating surgeon warned the plaintiff that the second surgery would probably not help her low back pain, and there was a possibility of a recurrence of scar tissue. (Tr. 164).

9

Meade

from squatting, and walk on her heels or toes, although some of this was directly contradicted by his narrative report. (Tr. 321-2).

Dr. Robert Ho, a neurosurgeon, examined the plaintiff on December 5, 2000 and made somewhat different physical findings, although he also noted intact sensation and strength. (Tr. 327-8). Reflexes at the ankles were reduced, and straight leg raising was markedly positive on the right at 25 degrees and on the left at 30 to 35 degrees. (Tr. 328). He diagnosed bilateral lumbar radiculopathy. In terms of functional impairments, Dr. Ho indicated that the plaintiff would have restrictions on bending, lifting, and twisting, but also recommended additional testing including an MRI and nerve conduction studies. (Tr. 329).

Dr. Deborah Jo Eadens, a family practitioner, submitted office notes of two visits. In April, 2001, she diagnosed low back pain with sciatica and restricted the plaintiff to lifting no more than 10 to 20 pounds. (Tr. 349). She ordered an MRI of the lumbosacral spine, which showed a focal extrusion L5-S1 on the right, abutting the thecal sac. (Tr. 352). No further functional restrictions were given. (Tr. 348). The plaintiff sought treatment from Dr. Ronald Belhasen for complaints of leg pain, and Dr. Belhasen obtained a bone scan which suggested the possibility of a non-union of the right leg fracture, although it was indicated that conventional x-rays should be obtained. (Tr. 353, 356-7). Apparently, x-rays had already shown

10

excellent alignment, according to Dr. Belhasen. (Tr. 356). He prescribed a bone stimulator, which produced only questionable improvement in the plaintiff's symptomology, and in August, 2001, new x-rays showed an apparent "consolidated fracture." (Tr. 355). His only suggestion for the plaintiff's subjective complaints was the removal of the rod. (Id.).

Dr. Michael Weaver saw the plaintiff on referral from Dr. Belhasen in October, 2001 for a second opinion on her right leg pain. (Tr. 376). He found an excellent range of motion with no instability, no swelling, a completely intact neurovascular status of the right leg, and obtained an x-ray of the right tibia which showed the intermedullary rod in excellent alignment with the fracture "completely, 100 percent radiographically healed." (Tr. 376). He felt the plaintiff had no limitation in her activities, although he indicated that she might have persistent pain. (Id.). In January, 2002, the plaintiff reappeared, asking for the rod to be removed from her leg, after Dr. Belhasen told her that he did not feel that removal was warranted. (Tr. 375). Dr. Weaver told the plaintiff that removing the rod would not relieve her symptomology, and again found no clinical abnormalities, but agreed to remove the rod "out of kindness." (Id.).

Dr. Eadens then referred the plaintiff to Dr. Howard Lynd, a specialist in pain management, who found her to be in moderate distress from low back pain, with

11

positive straight leg raising on the right, but negative on the left. (Tr. 422). He also found a grossly normal sensory, motor, and reflexes and sensation. (Tr. 423). Dr. Lynd prescribed Methadone and Neurontin, and made a series of spinal injections, but did not list any functional restrictions.

A state agency physician who reviewed the record in June, 2001, concluded that the plaintiff retained the residual functional capacity to perform "light" level exertion, could stand and walk at least two hours in an eight-hour day, could sit six hours in an eight-hour day, was limited to occasional pushing and pulling with the right lower extremity, could never climb ladders, ropes, or scaffolds, and could frequently climb ramps/stairs and crawl. (Tr. 467-72). This was consistent with the ALJ's functional capacity conclusions, although he restricted the plaintiff to "sedentary" exertion.

Counsel for the plaintiff essentially argues on appeal that an individual with as many objective physical problems as the plaintiff would be more severely limited than found by the ALJ, but it is the plaintiff's burden to prove her own case and, in terms of actual functional restrictions, Dr. Ho was the only examining or reviewing source in the relevant period who even arguably listed greater restrictions than found by the ALJ, with his comment that the plaintiff would have restricted bending, lifting, and twisting, to an unspecified degree. (Tr. 329). The ALJ restricted the plaintiff to sedentary jobs. Social Security Ruling 96-9p states that a restriction to only

12

occasional stooping would only minimally erode the unskilled occupational base of sedentary work, meaning that even if Dr. Ho, a one-time examiner, were given controlling weight, his restrictions would not <u>clearly</u> preclude the performance of the plaintiff's past jobs.

Counsel for the plaintiff further argues it was error to find that the plaintiff could return to her past jobs as a receptionist and rental agent because she was receiving special accommodations from her employer, and could not do the jobs as they were typically performed in the national economy. However, the Sixth Circuit has rejected the argument that a claimant cannot be denied benefits at Step Six where the requirements of his prior work as actually performed were uniquely lenient, holding that "it is generally reasonable (and consistent with the statute) to conclude that a person capable of performing work he performed before the impairment is not disabled as a matter of law and should be denied benefits." <u>Garcia v. Secretary of Health and Human Services</u>, 46 F.3d 552, 558 (6th Cir. 1995).

Counsel for the plaintiff also objects to the ALJ's interpretation of the evidence regarding the plaintiff's mental condition.

Although the plaintiff had sought treatment from outpatient mental health services in the early 1990s, and was given a diagnosis of dysthymia and a parent-child problem (e.g., Tr. 186), evidence in connection with the current application shows little evidence of specific restrictions. State Agency Psychological Examiner

13

Meade

Shelley Galssso Bonanno concluded after a January, 2001 session that the plaintiff had a dysthymic disorder and anxiety disorder, and "rule out" post traumatic stress disorder, with a Global Assessment of Functioning (GAF) score of 50. (Tr. 335-40). A GAF score of 50 reflects "serious" symptoms. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision), p. 34. She was seeing no doctors and taking no prescribed medications. (Tr. 335). A few months later, the plaintiff began treatment at the Adanta Group outpatient mental health clinic and, after three visits, Kenneth Davis, a certified psychologist with autonomous functioning, presented a diagnosis of adjustment disorder with mixed depression and anxiety, a provisional diagnosis of bipolar disorder, and a personality disorder, with a GAF of 55. (Tr. 345-6). A GAF score of 55 reflects moderate symptoms. She had been referred to a pain management group and to the staff psychiatrist for possible medication, but these visits had not taken place yet. (Tr. 346). The plaintiff argues that restrictions given by Mr. Davis on attention, concentration, and completing tasks were ignored by the ALJ, but Mr. Davis qualified his statement by indicating the limitations were due to her "apparent" hypomanic behavior. (Tr. 346-7). Dr. Ann Demaree, a state agency psychologist who reviewed the record at this point concluded that the plaintiff would have moderate limitations in her ability to maintain attention and concentration for extended periods and to complete a normal workday and workweek without interruptions from psychologically-based symptoms and

14

Meade

perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 462-3). However, the state agency psychologist also felt the plaintiff was capable of performing tasks, relating to others, and could adapt to work environments within her principal limitations. (Tr. 464). Subsequent office notes from Adanta show that the staff psychiatrist performed an evaluation on May 30, 2001, and noted the plaintiff's complaints of a history of hyperactivity and mood swings, as well as anxiety. (Tr. 400). She appeared moderately anxious, oriented, with fair judgment, and average intellectual functioning. (Tr. 401). He assessed a generalized anxiety disorder and "rule out" a panic disorder and a dysthymic disorder, and prescribed Paxil and counseling. (Id.). Within a few months, the plaintiff's counselors indicated that her GAF score had risen to 65, indicating only mild symptoms (Tr. 392), and it remained at this level through April, 2002, when the notes end (Tr. 381). One of the counselors, Rebecca Lawless, submitted a mental residual functional capacity form in September, 2002 indicating that the plaintiff had severe limitations of function in certain areas and moderate limitations in many others. (Tr. 479-82). The ALJ rejected this report, saying that it was inconsistent with the clinical findings that the plaintiff was experiencing only mild symptoms. (Tr. 26). The Court also notes that it does not appear to have been prepared by an "acceptable medical source" under 20 C.F.R. Section 416.913.

15

Case: 6:05-cv-00286-GWU   Doc #: 13   Filed: 04/26/06   Page: 16 of 16 - Page ID#: 100


Meade

Under the circumstances of this case, in which the plaintiff did not carry her burden of showing that she could not perform her past work, and given the apparent improvement in the plaintiff's symptomology following the preparation of the state agency opinions, the ALJ's functional capacity conclusions are supported by substantial evidence.

Finally, the plaintiff argues that the ALJ did not properly consider her impairments in combination, but the hearing decision is adequate in this regard. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 591 (6th Cir. 1987).

The decision will be affirmed.

This the   26   day of April, 2006.

G. WIX UNTHANK
SENIOR JUDGE

16